UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DEREK BOYD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-02799-TWP-TAB |
| | ) | |
| WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Derek Boyd's petition for a writ of habeas corpus challenges his conviction in prison disciplinary case number STP 20-07-0087. For the reasons explained in this Order, Mr. Boyd's petition is **denied**.

**A. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

**B. Disciplinary Proceeding**

On July 23, 2020, Indiana Department of Correction (IDOC) staff member J. Ploeger wrote

a conduct report charging Mr. Boyd with a violation of IDOC Adult Disciplinary Code B-213, threatening staff:

> On 7/23/2020 at @ 830 am, I, J. Ploeger, was conducting a retaliation meeting with Offender Derek Boyd #273507. During this meeting Offender Boyd made multiple statements in a loud voice that 'we were putting offenders and staff in danger.' I asked Offender Boyd what he meant, and he stated to me that 'He had beat a man almost to death several times, and that he had been in over 300 fights and that he was not afraid to fight.' I then stated to Boyd, 'that was not something to be proud of', and he responded with 'your right, but I'm just saying I know how to fight and I'm not afraid to.' I perceived this statement as intimidating and a direct threat to staff and offender safety. Due to this behavior and statement I was forced to end the meeting.

Dkt. 9-1. The respondent notes that Ms. Ploeger was the facility's Prison Rape Elimination Act (PREA) compliance manager, and the reference to a "retaliation meeting" was related to a PREA incident that Mr. Boyd claimed was not being investigated. Dkt. 9 at 2.

Staff member Sandberg provided a witness statement that she "witnessed Offender Boyd standing in Ms. Ploeger's office talking with her," but that Sandberg could not hear what was being said. Dkt. 9-2. Ms. Sandberg could, however, "see that Offender Boyds [*sic*] body gestures appeared to be very agitated and at times threatening" and she could "hear the volume of [Boyd's] voice increasing[.]" *Id.* Ms. Sandberg witnessed the incident while sitting at the desk in front of the library, and Ms. Ploeger's office is in the back corner of the library. *Id.*

Mr. Boyd was notified of the charge on July 24, 2020, and he pled not guilty. Dkt. 9-3. According to the screening report, he did not wish to call any witnesses but did request video evidence from inside the law library for the relevant time period. *Id.* Mr. Boyd was not allowed to review the video due to safety and security risks, but a summary of the video was prepared by the disciplinary hearing officer (DHO):

> On the above stated date/time/location, video evidence shows Offender Boyd walk into Mrs. Ploeger's office for a consecutive amount of time. During that time frame, the offender goes off and on camera view. However, during the time frame he is

> viewed, he appears to be having a conversation in an aggressive manner by the way the offender was moving forward with his body and swaying his hands in front of his person.

Dkt. 9-6. The Court has reviewed the video, filed *ex-parte*, and finds that the summary is not inconsistent with the footage. Dkt. 13. Mr. Boyd can be seen entering Ms. Ploeger's office multiple times, moving his body forward in and out of the camera frame in an animated way, and gesturing with his hands or moving them on and off the door frame throughout the conversation. For much of the video, Ms. Sandberg is near her desk where Ms. Ploeger's office is in view. There is no audio to the video.

A disciplinary hearing was held on July 28, 2020, and Mr. Boyd made a statement that he was in physical danger and was trying to tell Ms. Ploeger about his grievances related to the PREA claim he submitted. Dkt. 9-5. He stated that "it was self-defense" and that he was telling Ms. Ploeger that he could defend himself if he needed. *Id.* The DHO considered the staff reports and the witness statement and found Mr. Boyd guilty. *Id.* The DHO reasoned that "the staff report is clear that the offender was making threatening statements and the incident report from staff supports the conduct. Furthermore camera evidence supports the conduct written." *Id.* Mr. Boyd's sanctions included a deprivation of earned credit time and a credit class demotion. *Id.*

Mr. Boyd's administrative appeals to the Facility Head and the Final Reviewing Authority were unsuccessful. Dkt. 9-7; dkt. 9-8; dkt. 9-9. Mr. Boyd then filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which is now fully briefed and ripe for the Court's ruling.

### C. Analysis

Mr. Boyd raises five grounds in his petition: (1) he was denied video evidence, (2) he was not timely provided with Ms. Sandberg's witness statement, (3) he did not receive an adequate written statement from the DHO, (4) he was denied an impartial decisionmaker and an impartial

3

final reviewing authority, and (5) the disciplinary case was a result of retaliation against him. Dkt. 1.

As a preliminary matter, Mr. Boyd alleges various violations of IDOC policy. But any argument related to violations of IDOC policies fails. Prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, claims based on prison policy do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x  531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief.").

The Court will now address each of Mr. Boyd's grounds, in turn.

## 1. Denial of Evidence

Mr. Boyd argues that he was not provided "the camera evidence or a review of such." Dkt. 1 at 2. He states that he was not given a written reason as to why this evidence was not provided. *Id.* Mr. Boyd believed the video would show his demeanor during the incident. *Id.*

"[P]rocedural due process require[s] prison officials to disclose all material exculpatory evidence" to the petitioner in a disciplinary case. *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). "Evidence is exculpatory if it undermines or contradicts the finding of guilt, and it is material if disclosing it creates a reasonable probability of a different result." *Keller v. Cross*, 603 F. App'x

488, 490 (7th Cir. Feb. 11, 2015) (internal citations omitted). "There is an exception, however, to the disclosure of material, exculpatory evidence that would unduly threaten institutional concerns." *Jones*, 637 F.3d at 847 (internal quotation omitted). When prison administrators believe a valid justification exists to withhold evidence, "'due process requires that the district court conduct an in camera review' to assess whether the undisclosed [evidence] is exculpatory." *Johnson v. Brown*, 681 F. App'x 494, 497 (7th Cir. 2017) (quoting *Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003)). As the petitioner, it is Mr. Boyd's burden to establish that any evidence he was denied was material and exculpatory. *See Piggie*, 344 F.3d at 678 (noting the petitioner did not "explain how [the requested witness's] testimony would have helped him" and thus "the district court properly denied relief" on the petitioner's claim that he was wrongfully denied a witness). Mr. Boyd has not met this burden.

Here, the DHO determined that allowing Mr. Boyd to review the video would jeopardize the safety and security of the facility and indicated this reasoning on the report of disciplinary hearing video review with his written summary of the footage. Dkt. 9-6. The Court has reviewed the video, filed *ex parte*, and it is as described in the summary. The DHO found that Mr. Boyd's posture and movement showed aggression that implied threatening speech. The video does not contain audio, and thus, does not exculpate Mr. Boyd of his charge of making verbal threatening statements to Ms. Ploeger as she detailed in her conduct report. Though Mr. Boyd may disagree with the DHO's interpretation of the video, the Court finds nothing in the footage that undermines the DHO's conclusion.

Therefore, Mr. Boyd's arguments that he was denied the video or that he was denied review of the written summary of the video at the hearing are not grounds for habeas relief, for even if Mr. Boyd was not allowed either form of review of this evidence, it was harmless error, because

the video would not have helped him. *See Jones*, 637 F.3d at 847 (the denial of the right to present evidence will be considered harmless unless the prisoner shows that the evidence could have aided his defense). Accordingly, he is not entitled to habeas relief on these grounds.

### 2. Notification of Witness Statement

Mr. Boyd argues that he was not provided with the evidence that was being used against him at least 24 hours prior to the disciplinary hearing. Dkt. 1 at 2. Specifically, he states that he did not receive Ms. Sandberg's witness statement until the hearing—later he argues he did not see it until after the proceeding—and that the facility did not continue his hearing to allow him to respond to this evidence. *Id.* He contends this lack of notification did not give him time to prepare his defense. *Id.*

Due process requires that an inmate be given 24-hours advanced "written notice of the *charges* . . . in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564 (emphasis added). Mr. Boyd was adequately notified of the charge against him—a violation for threatening staff—during the screening process. Dkt. 9-3 (notified on July 24, 2020). The conduct report outlined the incident and the statements Ms. Ploeger found intimidating and threatening. His disciplinary hearing did not occur until four days after the screening process, well over the 24 hours advanced notice due process requires. Dkt. 9-5.

Due process does not require that Mr. Boyd receive advanced notice of all witnesses or the evidence against him in a disciplinary case. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. The lower courts may not expand the limited array of rights that

apply in disciplinary actions. *See White v. Ind. Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001). And this Court will not do so here.

Further, while Mr. Boyd is entitled to a limited ability to present witnesses, the due process protections under *Wolff* and *Hill* do not entitle him to the ability to exclude any witness testimony or evidence collected against him. *See Wolff*, 418 U.S. at 563-67; *Hill*, 472 U.S. at 454.

Accordingly, Mr. Boyd is not entitled to habeas relief on this ground.

**3. Adequate Written Statement from DHO**

Mr. Boyd argues that the DHO failed to provide him with an adequate written statement supporting his guilty finding. Dkt. 1 at 5. "Due process requires that an inmate subject to disciplinary action is provided 'a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary actions.'" *Scruggs*, 485 F.3d at 941 (quoting *Forbes v. Trigg*, 976 F.2d 308, 318 (7th Cir. 1992)). The written-statement requirement is not "onerous," as the statement "need only illuminate the evidentiary basis and reasoning behind the decision." *Id.* The level of detail required in a hearing officer's written statement "will vary from case to case depending on the severity of the charges and the complexity of the factual circumstance and proof offered by both sides." *Arce v. Ind. Parole Bd.*, 596 F. App'x 501, 503 (7th Cir. 2015) (quoting *Culbert v. Young*, 834 F.2d 624, 631 (7th Cir. 1987)). "[I]n a straightforward case . . . a very brief statement is sufficient." *Dullen v. McBride*, 27 F. App'x 607, 610 (7th Cir. 2001) (citing *Culbert*, 834 F.2d at 629-30).

Mr. Boyd's arguments do not specifically challenge the length or detail of the DHO's written statement, but rather, that he did not receive a copy of the statement until after his guilty finding and that the evidence the DHO relied upon was inadmissible and insufficient. Dkt 1 at 5. These arguments are unavailing. The fact that the DHO's written statement cites the evidence relied

upon and articulates that the DHO found that evidence supportive of his conclusion is enough to meet the minimal standard due process requires. Accordingly, Mr. Boyd is not entitled to habeas relief on this ground.

### 4. Impartiality of DHO and Final Reviewing Authority

Mr. Boyd argues that neither the DHO nor the Final Reviewing Authority was fair or impartial. *Id.* at 3-4. He states the DHO produced new evidence of Ms. Sandberg's written statement, did not allow him a continuance, and had already determined his guilt before the hearing. *Id.* He contends that the Final Reviewing Authority did not follow procedure or due process during his appeal process. *Id.*

### a. DHO's Impartiality

A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. at 454. Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the IDOC. *Piggie*, 342 F.3d at 666. Instead, hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Mr. Boyd has not provided clear evidence to rebut the presumption that the DHO was impartial. He has not shown that the DHO was directly or substantially involved in the factual events or investigation of his charge or that the DHO had a disqualifying relationship that would

establish partiality. *See, e.g., Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002) (noting that a prisoner's due process right to an impartial decisionmaker might be violated if the officer on the review board was engaged in an intimate, romantic relationship with one of the witnesses crucial to the prosecution.).

To the extent that Mr. Boyd argues that he filed a lawsuit in this Court prior to his disciplinary hearing, against Ms. Ploeger and the DHO, among other defendants, this is unpersuasive. Mr. Boyd merely speculates that Ms. Ploeger and the DHO "had plenty of time to discuss being named in the lawsuit and [to] retaliate" against him such that the DHO was partial and coerced into finding him guilty.[1] Dkt. 16 at 4. But even if Mr. Boyd had some prior history with the reporting staff member or DHO, that does not by itself establish a constitutional violation. *See, e.g., Peters v. Anderson*, 27 F. App'x 690, 692 (7th Cir. 2001) ("Prisoners often sue multiple defendants with only tenuous connections to the factual bases of their complaints, and just being named in a lawsuit is not enough to disqualify a prison employee from serving on a CAB. [Petitioner] was required to show more, e.g., that [the DHO] had significant personal involvement in the events underlying his lawsuit.); *see also Redding v. Fairman*, 717 F.2d 1105, 1113 (7th Cir. 1983) (due process does not require automatic disqualification of CAB members who are defendants in unrelated lawsuits filed by inmate facing a disciplinary hearing).

### b. Final Reviewing Authority

Mr. Boyd raises issues regarding the processing of his administrative appeals, however, there is no due process right to an administrative appeal, and thus any errors during the administrative appeal process cannot form the basis for habeas relief. *See, e.g., Popplewell v.*

---

[1] The respondent persuasively argues that it is unlikely that any of the defendants Mr. Boyd sued were aware of the litigation because service was not directed on them until October 2020, after the disciplinary hearing had occurred. Dkt. 9 at 16.

*Vanihel*, 2022 WL 17251202, at *2 (S.D. Ind. Nov. 28, 2022) ("the Court may not grant habeas relief based on any issue arising from the administrative appeals process, which is a creation of IDOC or prison policies").

Moreover, the Supreme Court made clear that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. The due process rights that apply, which are set forth in detail in *Wolff*, do not include any safeguards during an administrative appeal, not even a right to appeal at all. And the procedural guarantees set forth in *Wolff* may not be expanded by the lower courts. *See White*, 266 F.3d at 768.

Accordingly, Mr. Boyd is not entitled to habeas relief on these grounds related to the impartiality of the DHO or the Final Reviewing Authority.

### 5. Retaliation

To the extent that Mr. Boyd argues that he was subjected to retaliation or that the DHO or individuals involved in his disciplinary conviction conspired against him, these claims fail. Dkt. 1 at 2, 5. "Prisoners have a right to be free from retaliation by prison officials, but . . . the procedural requirements of *Wolff* adequately protect prisoners from fraudulent charges." *Wilson v. McBride*, 93 F. App'x 994, 996 (7th Cir. 2004) (citing *McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999); *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir. 1987)). As the Court discussed in the previous sections, Mr. Boyd has not demonstrated that due process violations occurred, nor does he sufficiently argue that any other protections afforded to him under *Wolff* were violated. So, "his retaliation claim also fails." *Id.*

### D.  Conclusion

The touchstone of due process is protection of the individual against arbitrary action of the

government." *Wolff*, 418 U.S. at 558.  There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Boyd to the relief he seeks.

Accordingly, Mr. Boyd's petition for a writ of habeas corpus is **denied** and this action is **dismissed with prejudice**.

Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date:    12/2/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

DEREK BOYD
273507
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Frances Hale Barrow
INDIANA ATTORNEY GENERAL
frances.barrow@atg.in.gov